IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


KENNETH ALIFF,

                        Plaintiff,

v.                                              CIVIL ACTION NO.   2:15-cv-13513

WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY, et al.,

                        Defendants.


**MEMORANDUM OPINION AND ORDER**


Pending before the Court are motions to dismiss filed by Defendants Austin Burke and Travis Crook.   (ECF Nos. 7 and 14.)   For the reasons discussed herein, each motion is **GRANTED IN PART**, to the extent it seeks dismissal of Plaintiff's federal claims.   The Court **DISMISSES** Plaintiff's federal claims, **DECLINES** to exercise supplemental jurisdiction over his remaining state law claims, and **REMANDS** this matter to the Circuit Court of Kanawha County, West Virginia for further proceedings.

*I.      Background*

This case arises from a sweep for contraband conducted by officials at the Southern Regional Jail in the spring of 2014.   Based on the alleged illegal conduct of the Defendants—both named and unnamed—during and after the sweep, Plaintiff alleges violations of the federal constitution, the West Virginia state constitution, West Virginia regulations, and West Virginia

1

state tort law.   Although Plaintiff's pleading is not a model of clarity or organization, it is clear that his federal claims are based on Defendants' excessive use of force.   He also asserts a grab bag of due process and conspiracy arguments based on Defendants' conduct during the sweep and subsequent efforts to cover up their alleged wrongdoing.   As will be described, Plaintiff's pleading is long on legal conclusions and citations to internal prison policy and state legislative rules, but very short on factual allegations asserting how any of his federal constitutional rights were actually violated.

Plaintiff originally filed his complaint in the Circuit Court of Kanawha County on August 21, 2015.   On September 8, 2015, Defendant Burke filed a notice of removal invoking this Court's "arising under" jurisdiction under 28 U.S.C. § 1331, based on Plaintiff's federal constitutional claims, and inviting this Court to exercise supplemental jurisdiction over his pendent state law claims.   (ECF No. 1.)   Following removal, Defendants Burke and Crook filed motions to dismiss against the original complaint, primarily arguing that the complaint was insufficiently pled and that they are entitled to qualified immunity.[1]   (*See* ECF Nos. 7 and 14.)   On March 3, 2016, Plaintiff moved to amend his complaint to identify additional wrongful conduct by Defendants discovered through "[r]ecent discovery in a parallel case."   (ECF No. 40.)   The Court granted that motion on July 21, 2016.   (ECF No. 49).   Plaintiff's proposed amended complaint (the "Amended Complaint"), originally filed as an exhibit to the motion to amend, was docketed and

---

[1] The West Virginia Regional Jail and Correctional Facility Authority also filed a motion to dismiss, asserting qualified immunity under state law.   (ECF No. 5.)   Because Plaintiff expressly did not bring federal constitutional claims against the jail, however, the Court declines to address those arguments given the disposition of this case as set forth in this opinion.   Similarly, the Court does not address the motions of the individual defendants (Burke and Crook) to the extent they seek dismissal of Plaintiff's state law claims.   The Court passes no judgment on the sufficiency of any claims asserted pursuant to state law.

deemed filed that same day.   (ECF No. 50.)   While each Defendant has filed an answer, none have moved to dismiss the Amended Complaint.

Generally, an amended pleading supersedes the original pleading and renders it legally inoperative.   *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001).   As such, the normal course would be to deny the motions challenging the sufficiency of an inoperative complaint as moot.   However, dismissal is not necessary where, as here, the challenged portions of the original complaint are reproduced in the amended complaint and the amended complaint suffers from the same defects identified in the motion to dismiss.   *See O'Boyle v. Superior Moving & Storage, Inc.*, Civil Action No. 5:09–cv–00166, 2009 WL 2496933, at *2 (S.D. W. Va. Aug. 13, 2009); 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1476 (3d ed. 2011) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.   To hold otherwise would be to exalt form over substance.").   Here, the amendments to Plaintiff's original complaint detail Defendants' alleged cover-up effort and provide several allegations that Defendants failed to follow internal prison policy in conducting the sweep.   They do not, however, set forth any additional factual allegations of actual conduct during that sweep or other illegal actions directed at Plaintiff personally, and thus do not moot the arguments raised in the pending motions to dismiss.   Accordingly, the Court will consider the pending motions to dismiss with respect to the Amended Complaint.

According to the Amended Complaint, the West Virginia Regional Jail and Correctional Facility Authority ("RJCFA") employs "Special Response Teams," abbreviated by Plaintiff as "SRT," for the purpose of "searching inmates [sic] cells for contraband."   (ECF No. 50 ¶ 3.)   In

3

"the Spring of 2014," "on or about May 21–24," RJCFA conducted a "raid or training session" using an SRT comprised of Defendants Burke, Crook, and Simons, as well as other individuals designated by Plaintiff as "John Doe Correctional Officers/Special Response Team Members." (*Id*. ¶¶ 3–4, 11.)   Although Plaintiff alleges that the RJCFA conducted this operation, he also alleges that the SRT "entered the jail of its own volition and not at the specific request of the jail administrator."   (*Id*. ¶ 11.)   While the Amended Complaint focuses on Defendants' abstract non-compliance with prison policies and procedures and West Virginia regulations governing prison operation, it provides almost no description of Defendants' actual conduct during the raid or how that conduct violated the cited provisions of law or caused Plaintiff any harm.

Plaintiff alleges that the officers used "unreasonable and excessive force in carrying out their duties," "unnecessarily and unreasonably [shot] plaintiff . . . with a bean bag," "unnecessarily us[ed] threats of physical force and violence," and generically "violat[ed]" state regulations governing the use of force against inmates and providing for a prison grievance procedure.   (*Id*. ¶¶ 12(1)–12(4).)   Most specifically, Plaintiff alleges that Defendants "used verbal threats of violence" and shot "plaintiff in the leg with a gun that propels bean bags," (ECF No. 50 ¶ 21), and that they "withheld proper medical care and treatment," (*id*.), "ignored grievances filed by plaintiff and other inmates regarding the conduct of the SRT," (*id*. ¶ 22), "confiscated and destroyed plaintiff's personal property," (*id*. ¶ 44), and "denied [Plaintiff] the use of a bed mattress for an extended period of time," (*id*.).   According to Plaintiff, Defendants singled out a set of "problem inmates" for harsher punishment "through the use of flash bang grenades and the deprivation of personal property."   (*Id*. ¶ 12(18).)   Plaintiff does not allege that he was listed as a problem inmate or personally singled out for special punishment.

Following the raid, Plaintiff alleges that Defendants, and most directly Burke, engaged in a large-scale cover-up operation to conceal these actions.  This alleged cover-up involved the destruction and concealment of evidence, the disregard of internal prison policy, the threatening of witnesses, and the discharge of one correctional officer for "disseminat[ing] . . . information to the Governor's office" regarding "the illegal conduct at the Southern Regional Jail."  (*Id*. ¶¶12(6)– 12(13), 12(20), 12(23)–12(25).)   Unlike the allegations regarding the raid itself, these allegations are relatively specific and point to several instances of actual conduct by Southern Regional Jail officials that allegedly hindered investigation into the raid's execution.

Finally, Plaintiff alleges that prior to the sweep, Defendants—and Burke in particular— counseled the SRT members to disregard internal prison procedures designed "to ensure that inmates are not subjected to improper treatment and excessive force."  (*Id*. ¶¶ 12(15)–12(18).) Although Plaintiff argues that this failure to follow policy resulted in his civil rights being violated when he was "shot without just cause," he does not identify any specific conduct by any individual that actually violated the procedures at issue or resulted in his shooting being unreasonable or without cause.  The only conduct alleged is that "Defendants" shot Plaintiff in the leg with a beanbag gun.   There is nothing to indicate why such shooting was unjustified or otherwise not in compliance with the provisions of law Plaintiff alleges were violated.

On the basis of these allegations Plaintiff asserts ten claims for relief.   Although Plaintiff makes little effort to identify the substantive sources of law that support his claims, it is clear that Counts I, II, V, VI, and X are state tort law claims based on assault and battery, intentional infliction of emotional distress, negligence, negligent supervision/training/testing, and intentional spoliation.   Count IX is generically labelled "conspiracy," and could potentially support an action

5

under either federal or state law.   To the extent it purports to state a federal conspiracy claim, it will be addressed below.   Counts VII and VIII are labeled "reckless conduct/willful wanton conduct" and "malicious conduct," respectively, and appear to be attempts to state independent claims for punitive damages.   To that extent, it is well-recognized that punitive damages are "a form of relief" and that "West Virginia law does not recognize an independent cause of action for punitive damages."   *Miller v. Carelink Health Plans, Inc.* 82 F. Supp. 2d 574, 579 n.6 (S.D. W. Va. 2000) (citing *Cook v. Heck's Inc.*, 342 S.E.2d 453, 461 n.3 (W. Va. 1986)).   In any case, these counts do not state any cognizable federal cause of action.

Plaintiff's federal claims appear in Counts III and IV.   The former alleges violations of the federal constitution, the state constitution, and state regulations, while the latter is labeled "Violation of 42 U.S.C. § 1983."   Section 1983 is not a source of substantive rights but merely a mechanism for a plaintiff to vindicate rights elsewhere guaranteed by federal law.   Accordingly, the Court construes Counts III and IV together as bringing (1) a § 1983 claim based on violations of the Eighth and Fourteenth Amendments of the federal constitution, and (2) state constitutional claims and other claims based on violations of state regulations.[2]   Defendants argue that Plaintiff's federal constitutional claims should be dismissed because his pleading is devoid of factual allegations demonstrating that either Burke or Crook (or anyone else for that matter) engaged in any excessive force or otherwise violated any of Plaintiff's constitutional rights.   (*See* (ECF No. 15 (Crook's Mem. in Supp. of Mot. to Dismiss) at 7; ECF No. 8 (Burke's Mem. in Supp. of Mot. to Dismiss) at 8–9).)

---

[2] The Court notes at the outset that Plaintiff is represented by counsel and as such his pleadings are not entitled to any liberality of construction.

6

## II.  *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A Rule 12(b)(6) motion does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).   Rather, it serves the crucial role of "defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1202 (3d ed. 2004)).

A case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the

speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III.    Discussion

As noted above, Defendants' asserted basis for jurisdiction upon removal is this Court's federal question jurisdiction, based on Plaintiff's assertion of constitutional claims pursuant to 42 U.S.C. § 1983.   Accordingly, the Court will address those claims first.   Although the Amended Complaint is complicated by Plaintiff's myriad citations to state regulations and internal prison policies, his federal constitutional claims are relatively straightforward.   As will be discussed, Plaintiff does not put forward sufficient factual allegations to permit a plausible inference that any Defendant engaged in any conduct that is actionable under the federal constitution.

### A.    § 1983 Claims

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.   Importantly, § 1983 is not itself the source of any substantive rights.   Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   "A federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color

8

of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiff's federal constitutional claims are directed at the individual defendants only; the Amended Complaint expressly disclaims any intent to proceed against the RJCFA under § 1983. (*See* ECF No. 50 ¶ 8.)   Individual defendants Burke and Crook both raise qualified immunity as a basis for dismissal of the federal constitutional claims against them, but their primary argument is that the Amended Complaint simply lacks sufficient factual allegations of actionable conduct by either defendant to state a plausible constitutional claim.   Qualified immunity shields government officials performing discretionary functions from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).   When a defendant asserts a qualified immunity defense at the 12(b)(6) stage, the plaintiff's burden is to demonstrate that his § 1983 claim "satisfies the following two-prong test: '(1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'" *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)).

Here, the Court determines that Plaintiff fails at the first step because he does not sufficiently allege a violation of any of his substantive constitutional rights.   The central harm alleged in the Amended Complaint is that RJCFA officials engaged in an excessive use of force when they shot Plaintiff with a bean bag gun.   Plaintiff alleges numerous constitutional injuries

9

as a result of the excessive force, including that Defendants' actions "deprived him of his right to liberty without due process of law and his right to equal protection under the law,"[3] (ECF No. 50 ¶ 25), violated his right "to be free from unreasonable search and seizures and unreasonable intrusions on his bodily integrity," (*id*. ¶ 30), constituted cruel and unusual punishment and an "abuse of power," (*id*. ¶ 30–31), and violated the law "to such an extent that it shocks the conscious [sic]," (*id*. ¶ 31).   Most of these legal conclusions are unsupported by any factual allegations and deserve little discussion.   The actual conduct Plaintiff alleges, however, is an application of force by RJCFA officials.   At bottom, his entire constitutional claim depends upon a finding that the use of force was excessive and illegal; absent such a showing, Plaintiff's general claims of egregious state actor behavior and illegal cover-up are not tethered to any underlying conduct or constitutional harm.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The Amended Complaint in this case has made such identification a difficult task.   Not only does it reference both the Eighth and Fourteenth Amendments, but it fails to specify whether Plaintiff was a convicted prisoner or

---

[3] Plaintiff makes no allegations that he is the member of any suspect class or that he was denied equal protection of the law on the basis of his race, sex, or sexual orientation.  *See Waters v. Bass*, 304 F. Supp. 2d 802, 810 (E.D. Va. 2004) ("Although the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not a suspect class.").   The only allegation in the Amended Complaint that could potentially be construed as implicating equal protection concerns is that prior to the sweep "a list had been compiled of problem inmates" and that the inmates on that list were treated more harshly during the raid's execution.   (ECF No. 50 ¶ 12(18).)   Even if such allegations could meet the Fourth Circuit's "deferential standard" for assessing equal protection claims in the prison context—that the alleged "disparate treatment is [not] 'reasonably related to [any] legitimate penological interests,'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (second alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001))—Plaintiff does not actually allege that he was one of the inmates actually singled out for disparate treatment.   Accordingly, Plaintiff's equal protection claim must fail.  *See Inmates v. Owens*, 561 F.2d 560, 62–63 (4th Cir. 1977) ("In order to state a civil rights claim upon which relief can be granted under § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States.").

merely a pretrial detainee at the time of the alleged assault. This distinction matters because the Constitution affords different protections to the two classes of inmates. *See id*. ("We reject the notion that all excessive force claims brought under § 1983 are governed by a single generic standard."). In particular, while the Eighth Amendment proscribes punishment that is cruel and unusual, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). On the other hand, a pretrial detainee, "who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Thus, a claim by a pretrial detainee challenging the conditions of his confinement generally sounds in the Fourteenth Amendment's Due Process Clause, *see Bell v. Wolfish*, 441 U.S. 520, 535 and n.16 (1979), which as relevant here "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10.

In general, "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In an Eighth Amendment claim "for excessive application of force, a prisoner must meet a heavy burden to satisfy the subjective component—that prison officials applied force 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In contrast, when a pretrial detainee brings a due process excessive force

11

claim, he "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Thus, a pretrial detainee can prevail "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473–74. Because pretrial detainees "cannot be punished at all, much less 'maliciously and sadistically,'" *id.* at 2475, a prison official defendant's "state of mind is not a matter that a plaintiff is required to prove." *Id.* at 2472.

Whether proceeding under the Eighth or the Fourteenth Amendment, however, courts look to a similar set of factors to determine the constitutionality of a prison official's application of force, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 2473 (citing *Graham*, 490 U.S. at 396) (providing illustrative list of "objective circumstances potentially relevant to a determination of excessive force" under the Due Process Clause); *see also Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (listing similar factors in an Eighth Amendment excessive force claim). Here, Plaintiff alleges violation of both his Eighth and Fourteenth Amendment rights and does not specify whether he was a pretrial detainee or a convicted prisoner at the time of the alleged incident. Because the Amended Complaint lacks sufficient factual allegations to permit a reasonable inference that any use of force against Plaintiff was objectively unreasonable, the Court determines that it fails to state an excessive force claim under either standard. *See Martin*, 849 F.2d at 870 (noting that "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner").

12

Absent a showing that force was even unreasonably applied, Plaintiff cannot demonstrate that it was applied maliciously and sadistically for the very purpose of causing harm.

As described above, the Amended Complaint does not detail the force that was actually applied to Plaintiff during the sweep for contraband.   Stripped of its conclusory assertions that Defendants' use of force was excessive and unreasonable, Plaintiff's only factual allegations are that he was shot in the leg with a bean bag gun and that his resulting injuries "required medical treatment."   (ECF No. 50 ¶ 16.)   It does not describe the full extent or severity of that injury or even what type of injury was involved.   Nor does it describe the circumstances which gave rise to the SRT raid at issue, the security threat posed by Plaintiff or anyone around him, the number of times Plaintiff was shot or the distance at which the shot was fired[4], alternative tactics attempted or eschewed by Defendants, or any other circumstantial detail that would allow the Court to gauge the reasonableness of Defendants' actions.   Perhaps most importantly, it does not provide whether Plaintiff was resisting the officers or compliant with their directives.   *See Boone*, 583 F. App'x at

---

[4] In his response to Defendant Burke's motion to dismiss, Plaintiff attaches an investigative report of the SRT raid in question.   That report found, based on video evidence of the incident, that bean bag rounds were deployed in "almost a point blank fashion."   (ECF No. 12, Ex. 2 at 1.)   In general, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"   *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).   "The same standard applies to documents attached to a plaintiff's response in opposition."   *Fisher v. Md. Dep't of Pub. Safety and Corr. Servs.*, Civil No. JFM 10–CV–0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009)).   Here, the attached report was not referenced in Plaintiff's original complaint (or the amended version which was filed after the response brief) and is not integral to Plaintiff's claim in that the claim is not based on the document itself.   *See Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (noting that a document is "integral" to a complaint only when "its very existence, and not the mere information it contains, gives rise to the legal rights asserted" (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007))).   Accordingly, the Court cannot consider the extrinsic document without converting the pending motion into one for summary judgment.   *See* Fed. R. Civ. P. 12(d).   Here, the Court declines to affect such a conversion and will disregard the report and all other exhibits attached to Plaintiff's response.

The Court notes, however, that even if considered, the report would do nothing to alter the Court's conclusion in this case because it does not indicate that Plaintiff personally was shot at close range with a bean bag gun.   If Plaintiff was indeed shot at close range, he had the opportunity to include such an allegation in his amended pleading and declined to do so.

176 (finding that Fourth Circuit precedent "establishes that the use of pepper spray on a docile prisoner could qualify as excessive force") (citations omitted); *Hunter v. Young*, 238 F. App'x 336, 339 (10th Cir. 2007) (collecting cases for the proposition that "the use of a taser or similar stun gun is not per se unconstitutional when used to compel obedience by inmates").

Although there is less case law analyzing a prison official's use of a bean bag gun than other more common tools such as pepper spray or a stun gun, similar logic applies whenever a prison official uses force against an inmate. Such use of force cannot be judged in a vacuum and "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham*, 490 U.S. at 396). The government has a legitimate interest in managing the facilities in which individuals are detained, including taking necessary "steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees." *Bell*, 441 U.S. at 540. By necessity, some of those steps will require the application of force in response to disturbances that are often "tense, uncertain, and rapidly evolving." *Kingsley*, 135 S. Ct. at 2474 (quoting *Graham*, 490 U.S. at 397). Accordingly, in such a highly contextual area of the law that eschews per se rules, a court must have *some* knowledge of the circumstances surrounding a given use of force—beyond the unadorned accusation that it was excessive and generally in violation of all laws and regulations governing a prison official's use of force—in order to draw the inference that such use of force was constitutionally unreasonable. *See Vizbaras v. Prieber*, 761 F.2d 1013, 1016 (4th Cir. 1985) ("The use of force, however, is not *per se* unconstitutional.").

Here, Plaintiff's Amended Complaint does not provide such context. Instead, it is utterly devoid of factual allegations describing Defendants' use of force or the circumstances that made

it illegal. Accordingly, the Court finds that Plaintiff, whether he was a pretrial detainee or a convicted prisoner at the time of the alleged incident, has failed to state a claim for excessive force. He has not alleged any facts suggesting that Defendants' alleged use of force was unreasonable, so as to constitute "punishment" under the Fourteenth Amendment, much less that it was applied maliciously and sadistically, so as to constitute "cruel and unusual punishment" under the Eighth Amendment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that the Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation").

In the absence of any constitutional violation during the execution of the raid, Plaintiff's other assortment of alleged constitutional violations must fall by the wayside. For example, the Court does not read Plaintiff's allegations that his shooting "deprived him of his right to liberty without due process of law," (ECF No. 50 ¶ 25), and that it was egregious, outrageous, an abuse of power, and violative of the law "to such an extent that it shocks the conscious [sic]," (*id.* ¶ 31), to state a standalone substantive due process claim because they are based entirely on the shooting and repetitive of the excessive force claim. If the shooting was not even unreasonable, then it could not be "fatally arbitrary in the constitutional sense," *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999), as necessary to state a substantive due process claim against a government official. *See Jones v. Wilson*, 1:14cv20 (CMH/IDD), 2015 WL 11110837, at *3 (E.D. Va. Feb. 27, 2015) ("[G]overnment action only violates substantive due process if it is undertaken for no legitimate purpose or without any justification by a valid governmental interest."), *aff'd* 609 F. App'x 159 (4th Cir. 2015); *see also Kinglsey*, 135 S. Ct. at 2473–74 (holding that a pretrial detainee can prevail on a claim that his due process rights were violated by providing evidence "that the challenged governmental action is not rationally related to a legitimate governmental objective or

that it is excessive in relation to that purpose").   In this case, as described above, Plaintiff has simply not forwarded well-pleaded allegations that Defendants engaged in unreasonable or arbitrary conduct during the raid or otherwise "punished" him in violation of the Due Process Clause.[5]

Moreover, to the extent Plaintiff's allegations of noncompliance with various internal prison procedures attempt to assert an independent due process claim, "[i]t is well settled that 'a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law.'"   *Holland v. City of New York*, ---F. Supp. 3d---, 2016 WL 3636249, at *12 (S.D.N.Y. June 24, 2016) (quoting *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002)); *see also Jackson v. Sampson*, 536 F. App'x 356, 357–58 (4th Cir. 2013) (noting that a prison official's "failure to follow internal correctional policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation"); *Morton v. Sheeley*, Civil Action No. 3:12–CV–122, 2014 WL 3700011, at *20 (N.D. W. Va. July 24, 2014) (noting that constitutional tort actions must be based on violations of federal constitutional rights, and rejecting the plaintiff's reliance on the West Virginia legislative rule governing jail operations on the ground that "a failure to adhere to administrative regulations does not equate to a constitutional violation") (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993))).

---

[5] Of course, this is the standard applicable assuming Plaintiff is a pretrial detainee.  If he were in fact a convicted prisoner, his constitutional claim challenging a prison official's use of force would arise under the textually specific Eighth Amendment and must accordingly "be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."   *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham*, 490 U.S. at 394); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (noting the Supreme Court's general hostility to expanding the scope of substantive due process and preference for analyzing claims that implicate specific provisions of the Constitution under those provisions rather than "the more generalized notion of substantive due process" (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))).   As a convicted prisoner then, Plaintiff's claims must arise under the Eighth Amendment rather than substantive due process.   As noted above, however, he fails to state any claim under the Eighth Amendment.

The same is true with respect to Plaintiff's allegations that Defendants failed to respond to Plaintiff's grievances. *See Richardson v. Thornton*, 299 F. App'x 461, 463 (5th Cir. 2008) ("The failure of the prison to follow its own policies, including a failure to address prisoner grievances, is not sufficient to make out a civil rights claim."); *Brown v. G.P. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994) ("Because a state grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the state's grievance procedure is not actionable under § 1983.").[6]

Under the heading of his federal constitutional claims, Plaintiff also alleges that he was subjected to an unreasonable search and seizure. Although it is far from clear, it appears this claim is based on his assertions, scattered throughout the Amended Complaint, that Defendants destroyed, confiscated or otherwise deprived him of his personal property. (*See* ECF No. 50 ¶¶ 12(5), 12(18), 26, 44.) These allegations generally lack clarity and appear largely based on violations of internal prison policy and state law.[7] To the extent they attempt to state a constitutional claim, however, the Supreme Court has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable

---

[6] The Amended Complaint contains scattered allegations that Plaintiff was denied proper medical care following the alleged incident of excessive force. These allegations do not appear in the sections of the Amended Complaint that are specifically addressed to Plaintiff's constitutional claims, and Plaintiff at least once bases his denial of medical care claim on a violation of internal prison policy. (*See* ECF No. 50 ¶ 21.) As noted above, the violation of internal prison policy does not by itself state a constitutional claim. To the extent Plaintiff attempts to state a constitutional claim based on inadequate medical care, he fails to set forth any factual allegations—such as the nature of his injury or the manner in which any Defendant denied him necessary care—in support. As Plaintiff has failed to allege that any Defendant named in the Amended Complaint was "deliberately indifferent to [his] serious medical needs," *Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992) (citation omitted) (noting that the "deliberate indifference" standard applies to claims made by pretrial detainees as well as convicted prisoners), he fails to state a denial of medical treatment claim under either the Eighth or Fourteenth Amendments.

[7] As noted above, such violations are not, standing alone, actionable under § 1983. Accordingly, Plaintiff's allegations that he was deprived of a mattress or a bed mat "for an extended period of time in violation of jail policy," (ECF No. 50 ¶ 44), do not state a § 1983 claim.

searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).   Although *Hudson* arose in the context of a convicted prisoner's claim, it has similarly been held that "persons lawfully arrested on probable cause and detained lose a right of privacy from routine searches of the cavities of their bodies and their jail cells." *Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992) (citing *Bell*, 441 U.S. 520, 559–60 (1979).   Given the Supreme Court's recognition that "[u]nfettered access to [inmates'] cells by prison officials . . . is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained," *Hudson*, 468 U.S. at 527, Plaintiff's general allegations that Defendants' raid for contraband constituted an illegal search of his cell do not state a Fourth Amendment claim.

Further, to the extent his allegations relating to the destruction and confiscation of property attempt to state a procedural due process claim, the *Hudson* court further held, in response to a "shakedown" for contraband similar to that alleged by Plaintiff, that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."   468 U.S. at 533.   Here, Plaintiff alleges that Defendants deprived him of property during a raid that was not requested by the jail administrator, (ECF No. 50 ¶ 11), under conditions in which "predeprivation procedures [would have been] simply 'impracticable.'"   *Hudson*, 468 U.S. at 533.   Although he makes some general allegations that he was denied access to prison grievance procedures, he does not allege that state common law remedies are unavailable to redress the property deprivation.   *See id*. at 540 (O'Connor, J., concurring) (noting that any deprivations of property effected by the search or seizure of a lawfully detained individual "have long been redressable in tort by actions for detinue, trespass to chattel,

and conversion").   Accordingly, Plaintiff does not state an actionable procedural due process claim based on any deprivation of personal property that may have occurred during the search of his cell.

Finally, as for the allegations that Defendants engaged in a conspiracy to cover up their unconstitutional conduct during the raid by suppressing and destroying evidence and silencing whistle blowers, "there can be no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."   *Kies v. City of Aurora*, 149 F. Supp. 2d 421, 424 (N.D. Ill. 2001) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)).   "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights: there is no constitutional violation in conspiring to cover up action which does not itself violate the constitution."   *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).   True, a § 1983 conspiracy claim can exist where defendants' cover-up efforts result in a plaintiff being denied his constitutional right to access the courts.   *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).   However, the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."   *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).   As such, the right of access is necessarily "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."   *Id*. at 415; *see also Spencer v. Town of Chapel Hill*, 290 F. Supp. 2d 655, 663 (M.D.N.C. 2003) ("[T]he right of access to the courts is violated only when the defendant's actions inhibit the plaintiff from filing a case or obtaining legal redress, not merely when the defendant's actions interfere with potential sources of evidence.").   Here, Plaintiff has not alleged that he was denied access to the courts, and, more importantly, does not identify any constitutional harm or

19

claim underlying the cover-up efforts.   In the absence of sufficient allegations of either, his federal conspiracy claim, based on allegations that Defendants' "impeded the due course of justice," (ECF NO. 50 ¶ 25), must be dismissed.

Based on the foregoing, the motions filed by Burke and Crook are **GRANTED IN PART**, to the extent they seek dismissal of Plaintiff's § 1983 claims.   In light of this disposition, the only federal claims remaining are Plaintiff's § 1983 claims against a third named defendant, Daniel Simons, and several John Doe defendants alleged to be members of the SRT team that conducted the raid in question.   As made clear by the foregoing, however, the problem with the Amended Complaint is that it fails to allege that *any* constitutional violation occurred.   Plaintiff's pleading failure is not specific to Defendants Burke and Crook—because the Amended Complaint largely fails to distinguish between any of the prison officials involved in the SRT raid, the finding that it fails to state a constitutional claim against Burke and Crook is equally applicable to Simons and the John Doe defendants.[8]   Although these Defendants have not actually moved for dismissal, the Court finds that *sua sponte* dismissal of the constitutional claims against them under Rule 12(b)(6) is appropriate on the facts of this case.   Plaintiff does not allege that any of these Defendants engaged in any conduct independent of Burke and Crook or otherwise distinguish Simons and the John Does from the defendants against whom dismissal has already been granted.   Accordingly, no further analysis is necessary to determine that Plaintiff has not stated a constitutional claim against these non-moving defendants.

---

[8] If anything, it is even more applicable to those defendants, none of whom are specifically identified as engaging in any conduct independent of the other defendants.   Burke, on the other hand, is mentioned independently in several of Plaintiff's allegations relating to the cover-up and other failures to follow internal prison policy.   (*See id*. ¶¶ 12(13), 12(14), 12(18), 12(20)–12(25), 22, and 56.)   Even Crook, whom Plaintiff barely mentions, is specifically alleged to have personally destroyed evidence recovered from the raid in violation of prison policy.   (*See id*. ¶¶ 12(27), 56.)

"The general rule is in limited circumstances, sua sponte dismissals of complaints under Rule 12(b)(6) . . .   are appropriate, but that such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."   *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (omission in original) (citations omitted); *see also Shaheen v. Saoud*, ---F. App'x---, 2016 WL 2990988, at *7 (4th Cir. May 24, 2016) ("[T]he court is not required to ignore an obvious failure to allege facts setting forth a plausible claim for relief. In such a circumstance, the court is authorized to dismiss a claim *sua sponte* under [Rule 12(b)(6)], as long as there is notice and an opportunity to be heard." (citations omitted)).   Here, Plaintiff was given notice that his claims were subject to 12(b)(6) dismissal, based on factual insufficiency and qualified immunity, by the motions to dismiss that were filed and had a full opportunity to brief those issues in response.   Moreover, he was granted leave to amend his complaint after the motions were filed, and the allegations in his Amended Complaint were insufficient to properly plead a constitutional claim against any defendant named therein.   Accordingly, "[w]here, as here, two defendants have moved to dismiss the Amended Complaint in its entirety for failure to state a claim, and the plaintiff has responded in full, the plaintiff is on notice and the 12(b)(6) motion may be considered with regard to all defendants for all claims briefed."   *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000).

In such circumstances, the Court is not raising the issue of the complaint's adequacy on its own initiative, but merely "applying the moving defendants' arguments to the nonmoving defendants on its own initiative."   *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, MDL No. 1712, 2006 WL 1531152, at *6 (E.D. Pa. June 2, 2006); *see also Humpherys v. Nager*, 962 F. Supp. 347, 353 (E.D.N.Y. 1997) (finding that where the rationale justifying

21

dismissal, as raised in a defendants' motion to dismiss, is identical as applied to claims against moving and non-moving defendants, the plaintiff "had notice that the complaint could be dismissed for failure to state a claim").  As the Amended Complaint "does not raise any allegations that would make the analysis for [the dismissed constitutional claims] as it pertains to [the non-moving defendants] any different than it would be for the other Defendants," *Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 945 (N.D. Ill. 2011), dismissal of the claims against the non-moving defendants is appropriate.  *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990) ("*Sua sponte* dismissal of the complaint with respect to [a non-moving defendant] is appropriate here, because the issues concerning [him] are substantially the same as those concerning the other defendants, and Hecht, the party against whom the judgment of dismissal was entered, had notice and a full opportunity to make out his claim against [the non-moving defendant]."); *Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*, 763 F. Supp. 2d 759, 768 (W.D.N.C. 2011) (finding that where the court had already determined that the plaintiff had failed to state a claim for relief, and the plaintiff made no claims unique to a non-moving defendant, the court "need not wait for [the non-moving defendant] to raise its own challenge to the sufficiency of [the complaint]," and *sua sponte* dismissing the claims against that non-moving defendant).

Accordingly, Plaintiff's federal constitutional claims under § 1983 are hereby **DISMISSED** in their entirety.

### B.    Supplemental Jurisdiction

As detailed above, the remainder of the claims asserted in the Amended Complaint are based on various provisions of West Virginia law, including the constitution, regulations governing jail operations, and tort law.   The Court's basis for jurisdiction over those claims, as

asserted in the notice of removal, is 28 U.S.C. § 1367, which grants this Court supplemental jurisdiction over "all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). That statute further provides, however, that a district court has discretion to decline such supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). In general, where the federal claims are dismissed before trial, pendent state law claims "should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). A court's decision to exercise jurisdiction over state law claims once federal claims are dismissed, however, is discretionary. *See, e.g.*, *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and consideration of judicial economy." *Id.*

Although § 1367 only speaks in terms of dismissing claims over which a court declines to exercise supplemental jurisdiction, a district court has "inherent power . . ., in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348 (1988) (finding that a district court "has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain"). While a district court retains jurisdiction over the state law claims once the federal claims have been dismissed, Fourth Circuit precedents "evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction." *Arrington v. City of Raleigh*, 369 F. App'x

420, 423 (4th Cir. 2010).   When this standard is met, a court can decline to exercise supplemental jurisdiction and remand a case to state court *sua sponte*.   *See id*. at 424 (finding reversible error in a case where all federal claims had been dismissed and the district court failed to *sua sponte* decline to exercise supplemental jurisdiction over state law claims and remand to state court); *Estate of Briggs v. Dep't of Safety & Corr. Servs. Div. of Corrs.*, Civil Action No. WMN–11–2664, 2012 WL 1044486, at *1 (D. Md. Mar. 27, 2012) (*sua sponte* declining to exercise supplemental jurisdiction over pendent state law claims following dismissal of federal claims and remanding to state court).

In this case, as the briefing on the pending motions to dismiss highlight, Plaintiff's remaining state law claims raise novel and complex issues of state law.   Most obviously, that briefing reveals a disagreement as to whether West Virginia law recognizes an independent cause of action for money damages under the state constitution.   Whether or not West Virginia recognizes such an action is an important matter of state policy that this Court has previously considered certifying to the Supreme Court of Appeals of West Virginia.   *See Fortuna v. Nelson*, 2:15-cv-11145 (S.D. W. Va. 2015), ECF No. 17.   Moreover, to the extent Plaintiff attempts to assert a cause of action directly under "state regulations," (ECF No. 50 at 7–8), the Court has been unable to find any case law discussing whether the West Virginia Minimum Standards for Jail Operation authorizes an independent cause of action.   Finally, Defendants' liability on Plaintiff's state law claims largely turns on analysis of West Virginia's state qualified immunity doctrine. As the parties' briefing makes clear, that area of the law is subject to many shades of gray.   As recently as 2014, the state supreme court lamented the absence of any state legislation to govern immunity for state actors and set out to "formulate a workable rule" for such immunity in

24

recognition of the fact that the existing state of the law had "compelled practitioners and the lower courts to indiscriminately borrow phrases from what this Court has described as a 'patchwork of holdings' to cobble together an applicable rule." *W. Va. Reg'l Jail & Corr. Facil. v. A.B.*, 766 S.E.2d 751, 762 (W. Va. 2014) (quoting *W. Va. Dep't of Health and Human Res. v. Payne*, 746 S.E.2d 554, 562 (W. Va. 2013)).   Two years later, suffice it say the law in this area of vital concern to the state could certainly still benefit from further development.

Based on all of these considerations, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.   As the foregoing indicates, those claims implicate issues of public official liability and immunity that are of great state concern.   Comity dictates that, in the absence of any underlying issues of federal policy, the state courts are the proper forum for the resolution of such issues.   *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").   Moreover, remand would not offend notions of fairness to the parties or judicial economy, as the case was initially filed in state court in the first place and has not yet proceeded to the point where renewing the state court proceedings would be wasteful or redundant.   *See Sansotta v. Town of Nags Head*, 863 F. Supp. 2d 495, 514 (E.D.N.C. 2012) ("The elimination of all federal claims before trial is generally a sufficient ground in itself for declining supplemental jurisdiction over pendent state-law claims."), *aff'd in part, rev'd in part*, 724 F.3d 533 (4th Cir. 2013).   Accordingly, as the federal claims upon which jurisdiction was based stand dismissed in their entirety before trial and "the remaining state law claims are not related to any issues of federal policy, the court declines to

exercise jurisdiction over the remaining state law claims." *Scraggs v. NGK Spark Plugs (USA), Inc.*, No. Civ.A.2:05 0267, 2006 WL 516772, at *2 (S.D. W. Va. 2006).

### IV.    *Conclusion*

For the reasons discussed herein, the motions to dismiss filed by Defendants Burke and Crook, (ECF Nos. 7 and 14), are **GRANTED IN PART**, insofar as they request dismissal of Plaintiff's federal claims.   The Court **DISMISSES** all of Plaintiff's federal claims against all defendants named in the Amended Complaint.   In the absence of any federal claims to confer jurisdiction in this case, the Court **DECLINES** to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims.   Accordingly, the Court **REMANDS** this matter to the Circuit Court of Kanawha County, West Virginia.   The Court **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.   The Court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to the Clerk of Court for the Circuit Court of Kanawha County, West Virginia.

ENTER:        September 26, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

26